UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| BOSTON TOMATO & PACKAGING, LLC., *et al.*, Plaintiffs | CIVIL ACTION NO. 04-395-T |
| vs. | |
| CAPITOL FOOD DISTRIBUTORS, LLC., *et al.*, Defendants | |

## PLAINTIFFS' MOTION FOR ASSESSMENT OF DAMAGES AND ENTRY OF PARTIAL JUDGMENT

Now come the Plaintiffs and move that this Court assess damages after default for the Plaintiffs against the Defendants Capitol Food Distributors, LLC., A 1 Food Distributors, Inc. and Benedetto Cerilli, some but not all of the Defendants, in accordance with the attached Memorandum of Damages and Affidavits of each of the Plaintiffs. Plaintiffs further request that an award of attorneys fees be made based upon the record before the Court. There being not just reason for delay, judgment should enter against said Defendants in the amounts assessed.

Plaintiffs request an oral argument. The estimated time is 15-30 minutes.

BOSTON TOMATO & PACKAGING, LLC.,
*et al.*,
By their Attorneys

RECEIVED
JAN 09 2006
Property of U.S. District Court
District of Rhode Island

Philip M. Weinstein, Esq.
Law Office of Philip Weinstein
1 Providence Washington Plaza
5th Floor
Providence, RI 02903

OSBORNE & VISCONTI,

Andrew M. Osborne
20 Eastbrook Rd., Suite 304
Dedham, MA 02026
(781) 326-9766
BBO# 380455

CERTIFICATE OF SERVICE

I, Andrew M. Osborne hereby certify that on the date set forth below I served the foregoing document, Plaintiffs' Memorandum in Support of Motion for Assessment of Damages, Affidavits of Plaintiffs, Affidavit of Andrew M. Osborne, Affidavit of Dennis Baluch and Certification by mailing a copy of the same by Certified Mail and first class mail, postage prepaid to Capitol Food Distributors, LLC., A 1 Food Distributors, Inc. and Benedetto Cerilli at 80 America Way, Jamestown, RI 02835

Signed under the penalties of perjury.

December 29, 2005

Andrew M. Osborne

Property of U.S. District Court
District of Rhode Island
JAN 09 2006
RECEIVED

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| BOSTON TOMATO & PACKAGING, LLC., *et al.*, | * | |
| Plaintiffs | * | CIVIL ACTION NO. |
| vs. | * | 04-395-T |
| CAPITOL FOOD DISTRIBUTORS, LLC., *et al.*, | * | |
| Defendants | * | |

PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION
FOR ASSESSMENT OF DAMAGES AND ENTRY OF JUDGMENT

This is an action for damages arising, *inter alia*, under the Perishable Agricultural Commodities Act, 7 U.S.C. §499a, *et seq.*, ( "PACA") from the failure of Capitol Food Distributors, LLC.. ("Capitol") and its members and managers, to make payment for the perishable agricultural commodities ("Produce") sold and delivered to Capitol by each of the Plaintiffs.

I. <u>Parties</u>

The Plaintiffs, Boston Tomato & Packaging, LLC. ("Boston Tomato"), Grant Stanton Produce Company, Inc. ("Grant Stanton"), Forlizzi & Bimber, Inc. ("Forlizzi") and Peter Condakes Company, Inc. ("Condakes"), are licensed under PACA as wholesaler dealers of fruit and produce at the New England Produce Center, Chelsea, Massachusetts (¶'s 3 - 6)[1]. Capitol is a licensed dealer under PACA. (**Exhibit 1** attached). A 1 Food Distributors, Inc. ("A 1") is the manager of Capitol according to the Rhode Island Secretary of State (**Exhibit 2** attached). . The PACA license identifies Bradford Cerilli and Joan Cerilli, inter alia, (¶9) as members of the Capitol limited liability company. Benedetto Cerilli is a principal of both Capitol and A 1 (¶10). (See ¶'s 7-15).

---

[1] Reference unless otherwise stated is to the paragraph numbers in the complaint.

## II. Case Status and Statement of Facts

The claims against Leo Hourihan, Sheila Hourihan, Bradford Cerilli, JCI General Partnership and Daniel Chow were dismissed on March 29, 2005, for failure to timely effect service of process. On July 19, 2005, Capitol, A 1, Joan Cerilli and Benedetto Cerilli were defaulted for failure to plead in response to the Complaint. Upon information and belief, Joan Cerilli is now deceased Inasmuch as liability and the liquidated contract damages have been determined by reason of the default against Capitol, A 1, and Benedetto Cerilli, what remains as to them to be determined is the interest, attorneys fees and the level of exemplary damages.

The Plaintiffs sold and delivered produce to Capitol on an open account basis in Massachusetts at their respective places of business. (Affidavits ¶3).[2] Together with the allegations in the complaint, which are deemed admitted by reason of the default, *KPS & Associates, Inc. v. Designs by FMC*, 318 F.3d 1, 24 (1st Cir. 2003), the Affidavits also establish that from around September 2003 and continuing until Capitol ceased operations at approximately year's end, purchases were made for which Capitol has failed to make full and prompt payment[3] and failed to maintain sufficient PACA trust assets to pay Plaintiff in a timely manner.(¶'s 88, 115, 116). It appears that Capitol has simply ceased to exist in any practical sense with no accounting for its assets. The indebtedness due to Plaintiffs is currently $12,655.50, plus interest at either the contract rate of eighteen (18%) percent per annum as appears on the invoices attached to the Affidavits or the

---

[2] Submitted herewith by Robert Nano for Boston Tomato, Shawn Grant for Grant Stanton, Steven Forlizzi for Forlizzi and Maria Frances for Condakes.

[3] 7 U.S.C. §499b provides in part : "It shall be unlawful in or in connection with any transaction in interstate or foreign commerce:

> (4) For any commission merchant, dealer, or broker...to fail or refuse truly and correctly to account and make full payment promptly in respect of any transaction in any such commodity to the person with whom such transaction is had; or to fail, without reasonable cause, to perform any specification or duty, express or implied, arising out of any undertaking in connection with any such transaction; or to fail to maintain the trust as required under section 499e of this title.

statutory rate of twelve (12%) per annum, M.G.L. c. 231 6C.[4]

III. Summary of Claims

Counts I through XII of the Complaint set forth the claims for amounts due from Capitol for breach of contract and on an account annexed for failure to make payment. Count XIII seeks imposition of liability upon the "responsibly connected persons" under PACA. Count XIV seeks recovery for attorneys fees and costs so as to promote the requirement in PACA. Count XV asserts that the Defendants committed unfair and deceptive acts and practices, i.e. the failure to observe the duty to make full payment promptly and to maintain the PACA Trust, and for purchasing goods knowing or intending that payment would not be made, and seeks damages under Mass. G.L. c. 93A.

IV. Argument

A. Background

PACA was enacted to encourage fair trading practices in the marketing of perishable commodities by suppressing unfair and fraudulent business practices in marketing of fresh and frozen fruits and vegetables . . . and providing for collecting damages from any buyer or seller who fails to live up to his contractual obligations. H.R. Rep. No. 543, 98th Cong., 2d Sess. 3 (1983), reprinted in 1984 U.S.C.C.A.N. 405, 406. Under PACA, it is unlawful for buyers of produce, *inter alia*, to fail to make prompt payment for a shipment of produce. 7 U.S.C. § 499b(4).

In order to address the problem arising from the large number of defaults by produce

---

[4] G.L.c. 231, § 6C. Interest added to damages in contract actions.
Section 6C. In all actions based on contractual obligations, upon a verdict, finding or order for judgment for pecuniary damages, interest shall be added by the clerk of the court to the amount of damages, at the contract rate, if established, or at the rate of twelve per cent per annum from the date of the breach or demand. If the date of the breach or demand is not established, interest shall be added by the clerk of the court, at such contractual rate, or at the rate of twelve per cent per annum from the date of the commencement of the action, provided, however, that in all actions based on contractual obligations, upon a verdict, finding or order for judgment against the commonwealth for pecuniary damages, interest shall be added by the clerk of the court to the amount of damages, at the contract rate, if established, or at a rate calculated pursuant to the provisions of section six I from the date of the breach or demand. If the date of the breach or demand is not established, such interest shall be added by the clerk of the court from the date of the commencement of the action.

purchasers, Congress added Section 499e(c) to PACA, Pub. L. No. 98-273, 98 Stat. 163 (1984), which impresses a trust in favor of the sellers on the inventories of commodities, the products derived therefrom, and the proceeds of sale of such commodities and products. See *JSG Trading Corp. v. Tray-Wrap, Inc.* , 917 F.2d 75, 77 (2d Cir. 1990) H.R. Rep. No. 543, at 3-4, reprinted in 1984 U.S.C.C.A.N. at 407.

Specifically, Section 499e(c)(2) of PACA provides that

> [p]erishable agricultural commodities received by a commission merchant, dealer, or broker in all transactions, and all inventories of food or other products derived from perishable agricultural commodities, and any receivables or proceeds from the sale of such commodities or products, shall be held by such commission merchant, dealer or broker in trust for the benefit of all unpaid suppliers or sellers of such commodities . . . until full payment of the sums owing in connection with such transactions has been received by such unpaid suppliers, sellers, or agents.

This provision imposes a "non-segregated floating trust" [hereinafter the "PACA Trust"] on the commodities and their derivatives, and permits the commingling of trust assets without defeating the trust. 7 C.F.R. § 46.46(c); *see also JSG Trading, supra* at 78. A single PACA Trust exists for the benefit of all PACA creditors and continues in effect until all PACA creditors are paid in full. *In re Kornblum & Co.*, 81 F.3d 280, 286 (2d Cir. 1996). Ordinary principles of trust law apply to the trusts created by the Act, see *Endico Potatoes v. CIT Group/Factoring, Inc.*, 67 F.3d 1063, 1067 (2nd Cir. 1995), so that a Dealer holds the legal title to the produce and its derivatives or proceeds but the seller retains an equitable interest in the trust property pending payment. *See* Restatement (Second) of Trusts § 2 (1959)

B. Assets Subject to the PACA Trust

The assets of the PACA Trust ordinarily consist of the produce and inventories of food or other products derived from the sale of produce and the proceeds from the sale of produce, including accounts receivable. 7 U.S.C. § 499e(c)(2). PACA defines such produce as "fresh fruit and fresh vegetables of every kind and character" including those frozen or packed in ice. 7 U.S.C. § 499a(b)(4). The burden of proving what was done with the trust assets lies with the defendants to the PACA claim. *Sanzone-*

*Palmisano Co. v. M. Seaman Enterprises*, 986 F.2d 1010, 1014 (6th Cir. 1993). The Defendants have furnished no such evidence The uncontested allegation is that the assets were dissipated (¶'s 88, 97, 115, 116).

C. Perfecting PACA Rights

To preserve its claim against a PACA Trust and its fiduciaries, a PACA creditor must comply with the notice requirements. In 1995, PACA was amended to allow a PACA creditor to preserve the benefits of the PACA trust by, on its ordinary and usual billing or invoice statement:

> (1) providing the terms of payment, if different from those established by the Secretary of Agriculture, and
> (2) including the following language:
>
> The perishable agricultural commodities listed on this invoice are sold subject to the statutory trust authorized by section 5© of the Perishable Agricultural Commodities Act, 1930 (7 U.S.C. 499e©). The seller of these commodities retains a trust claim over these commodities, all inventories of food or other products derived from these commodities, and any receivables or proceeds from the sale of these commodities until full payment is received. 7 U.S.C. § 499e(c)(4); 7 C.F.R. § 46.46(f)(3).

Here each of the Plaintiffs properly preserved its rights as a beneficiary of the PACA Trust by endorsing the requisite notice on the invoices tendered to Capitol.(¶ 84). See the invoices attached to the Affidavits. Each is entitled to recover the full amount of the damages sustained as a result of the failure of Capitol to make full payment promptly, 7 U.S.C. §499b, pursuant to 7 U.S.C. §499e(a).

D. Liability of Responsibly Connected Persons under PACA

Although PACA does not expressly state that shareholders, officers, or directors of a corporation, partners or members of a limited liability company, can be held individually liable under PACA, the courts have read such liability into the statute. Liability attaches to a person "responsibly connected" to the entity that breaches the fiduciary obligation to ensure that the PACA trust assets are properly preserved for th benefit of the Produce suppliers. "[A] PACA trust in effect imposes liability on a trustee, whether a corporation or a controlling person of that corporation, who uses the trust assets for

any purpose other than repayment of the supplier .... [including] legitimate business expenditures, such as the payment of rent, payroll, or utilities." *Morris Okun, Inc.*, *supra* at 348. *See also Sunkist Growers, Inc. v. Fisher*, 104 F.3d 280 (9th Cir. 1997); *In re Baird*, 114 B.R. 198, 204 (9th Cir. 1990); *In re Zois*, 201 B.R. 501 (Bankr. N.D. Ill. 1996). *See also*, *In re Al Nagelberg & Co.*, 84 B.R. 19 (S.D.N.Y. 1988) and *Hiller Cranberry Prods. v. Koplovsky*, supra. (The use of PACA trust assets for purposes other than the payment of PACA creditors without keeping an adequate reserve for payment constitutes an unlawful dissipation of trust assets).

The members of a limited liability company, like the shareholders of a close corporation, control the affairs of the entity and cannot avoid liability by virtue of any failure to exercise that control. *Golman-Hayden Co., Inc. v. Fresh Source Produce Co., Inc.*, 217 F.3d 348, 350 (5th Cir. 2001). A refusal or failure to exercise any appreciable oversight of the entity's management is a breach of the fiduciary duty to preserve PACA Trust assets. *Id.* In a limited liability company, the managers and members control the affairs of the business and are responsible for failure to maintain the PACA Trust, whether through intentional dissipation or through management neglect. Public policy strongly favors protection of the interests of the produce creditors. "[] PACA is a remedial statute that should be given a liberal construction in favor of promoting Congress' intended purpose." *Hiller*, *supra* at 6.

Consistent with the concept of responsibly connected persons, a PACA licensee must identify the officers, directors and those persons holding a ten (10%) ownership interest in the licensee.[5] The PACA license of Capitol identifies Bradford Cerilli, Joan Cerilli, Leo Hourihan, JCI General Partnership and Zu Yu Cheng (also known as Daniel Chow and Yu Cheng Zou, (¶9) as members of the Capitol limited liability company. This constitutes an admission on their part that each holds at least an ten percent ownership interest. Each of these persons is per se responsibly connected and thus liable to

[5] 7 C.F.R. § 46.2(ff) Responsibly connected means affiliation as individual owner, partner in a partnership, or officer, director or holder of more than 10 percent of the outstanding stock of a corporation or association.

Plaintiffs for their defalcations while acting in a fiduciary capacity. (¶'s 22, 89-97).

E. Damages under M.G.L. c. 93A

The Massachusetts Appeals Court stated in *Multi Technology, Inc. v. Mitchell Mgmt. Sys., Inc.*, 25 Mass. App. Ct. 333, 334-335 (1988), citing *Productora e Importadora de Papel, S.A. de C.V. v. Fleming*, 376 Mass. at 833-835, "Upon default under Mass.R.Civ.P. 55(b), 365 Mass. 822 (1974), the factual allegations of a complaint are accepted as true for purposes of establishing liability; the question whether an adequate statement of a claim for relief has been made, however, remains open. . . "

It is clear from the complaint that there remain outstanding obligations dating back months prior to the date Capitol ceased operations. The Defendants knew that each of the Plaintiffs expected to be paid in full for the goods in a timely manner (¶'s 34, 48, 62 and 76). The payment periods are set forth on each of the invoices an din the complaint (¶'s 25, 29, 43, 57). Despite the PACA imposed obligation to make "full payment promptly", there many dozens of purchases for which no payment was ever made. What the Defendants did with the money from the sale of the Produce has never been explained. Since the individual Defendants controlled the business of Capitol, they are the persons who engineered the breach of the duty to make payment to Plaintiffs within the terms of sale. A violation of c. 93A can be established as a result of the Defendants' default. *KPS & Associates, Inc. v. Designs by FMC*, supra.

An allegation that the defendants knew they could not pay or never intended to pay for the goods (¶'s 111 and 112) states sufficient facts to constitute a claim for relief under c. 93A. *Levings v. Forbes & Wallace, Inc.*, 8 Mass. App. Ct. 498, 504 (1979); *Multi Technology, Inc. v. Mitchell Mgmt. Sys., Inc.*, 25 Mass. App. Ct. 333, 334-335 (1988); *Marshall v. Stratus Pharm.*, 51 Mass. App. Ct. 667, 676, 749 N.E.2d 698 (2001). See *also Nader v. Citron*, 376 Mass. 96, 104, [fn4] (1977).

*Marshall v. Stratus Pharm.*, supra @ 677, reiterates the rule that individuals although acting within their authority as officers are personally liable for their own acts in violation of G.L.c. 93A, § 11. Cf. *Standard Register Co. v. Bolton-Emerson, Inc.*, 38 Mass. App. Ct. 545, 550-551 (1995), and cases

cited. *The Community Builders, Inc. v. Indian Motocycle Assocs., Inc.*, 44 Mass. App. Ct. 537, 560 (1998) (settled that corporate officers may be held liable under c. 93A for their personal participation in conduct invoking its sanctions); *Nader v. Citron*, supra @ 102 (1977).

A determination as to the award of multiple damages is not established by the default and is left to the Court to make. *Marshall v. Stratus Pharm.*, supra @ 677 and cases cited. The Court in *International Fidelity Ins. Co. V. Wilson*, 387 Mass. 841, 856, 443 N.E.2d 1308 (1983), stated that, " The multiple damage provisions of c. 93A are designed to impose a penalty, *Heller v. Silverbranch Constr. Corp.*, 376 Mass. 621, 627-628 (1978), that varies with the culpability of the defendant. *Linthicum v. Archambault*, 379 Mass. 381, 388 (1979). We believe that the Legislature intended that defendants would be independently liable for multiple damages under § 11."

"To be held unfair or deceptive under c. 93A, practices involving even worldly-wise business people do not have to attain the antiheroic proportions of immoral, unethical, oppressive, or unscrupulous conduct, but need only be within any recognized or established common law or statutory concept of unfairness. *Vmark Software, Inc. v. Emc Corp.*, 37 Mass. App. Ct. 610, 620,642 N.E.2d 587 (1994). PACA makes it clear that the failure to make payment is per se an unlawful and unfair act.[6] Violations of the duty under PACA to make full payment promptly are repeated if not simultaneous. *Reese Sales C. v. Hardin*, 458 F2d 183 (9th Cir. 1972). Here the many dozens of purchases over months were repeated. The failure to make payment is willful if its either intentional or in disregard of statutory authority. *Finer Food Sales Co., Inc. v. Block*, 708 F.2d 774, 778 (D.C. Cir 1983). The violations are

---

[6] 7 C.F.R. §46.2 (aa) Full payment promptly is the term used in the Act in specifying the period of time for making payment without committing a violation of the Act.

Section 499(b), entitled "Unfair Conduct", provides in part : "It shall be unlawful in or in connection with any transaction in interstate or foreign commerce:

(4) For any commission merchant, dealer, or broker...to fail or refuse truly and correctly to account and make full payment promptly in respect of any transaction in any such commodity to the person with whom such transaction is had; or to fail, without reasonable cause, to perform any specification or duty, express or implied, arising out of any undertaking in connection with any such transaction; or to fail to maintain the trust as required under section 499e of this title.

considered flagrant as the of violations and period of time over which violations occurred increase. *Reese Sales*, supra, and *Zwick v. Freeman*, 373 F.2d 110, 115 (2nd Cir. 1967).

The United States Department of Agriculture treats the repeated and flagrant violations of the prompt payment duty, such as those here, very seriously, often resulting in the revocation of the operating license and other sanctions.. See *In re: Scamcorp, Inc., PACA Docket No. 95-0502 (January 29, 1998).*[7] It is clear that the Defendants wilfully and knowingly and in disregard of their statutory duty undertook a course of action that tantamount to defrauding the Plaintiff.

G.L. c. 93A reflects "the Legislature's displeasure with the proscribed conduct and its desire to deter such conduct and encourage vindicative lawsuits." *McGrath v. Mishara*, 386 Mass. 74, 85 (1982) and to promote reasonable settlements. *Nader v. Citron*, 372 Mass. 96, 100 (1977). The "responsibly connected" persons here have, by virtue of their failure to answer the complaint admitted active and equal participation not only in the breach of fiduciary duty, but also in obtaining the goods from the Plaintiffs in violation of G.L. c. 93A. (¶'s 102, 111-116). The imposition of multiple damages against each of the Defendants is warranted.

Ignorance of the statutory duty and conscious disregard of the consequences not only constitutes a "willful or knowing" violation of c. 93A, see *Montanez v. Bagg*, 24 Mass. App. Ct. 954 (1987), and cases therein cited (especially *Computer Sys. Engr., Inc. v. Qantel Corp.*, 571 F. Supp. 1365, 1375 [D.Mass. 1983], aff'd, 740 F.2d 59, 68 [1st Cir. 1984]), it is conduct which is sufficiently egregious to justify treble damages. *Whelihan v. Markowski*, 37 Mass. App. Ct. 209, 212-213, 638 N.E.2d 927 (1994), citing *McGrath v. Mishara*, 386 Mass. 74, 85 (1982); *International Fid. Ins. Co. v. Wilson*, 387 Mass.

---

[7] "In any PACA disciplinary proceeding in which it is shown that a respondent has failed to pay in accordance with PACA and is not in full compliance with PACA..., the PACA case will be treated as a 'no-pay' case.... In any 'no-pay' case in which the violations are flagrant or repeated, the license of a PACA licensee, shown to have violated the payment provisions of PACA, will be revoked." p. 29

"Full compliance requires not only that a respondent have paid all produce sellers in accordance with PACA, but also,...that a respondent have no credit agreements with produce sellers for more than 30 days". p.30.

at 853, 857.

"[C]onduct 'in disregard of known contractual arrangements' and intended to secure benefits for the breaching party constitutes an unfair act or practice for c. 93A purposes." *Anthony's Pier Four, Inc. v. HBC Assocs.*, 583 N.E.2d 806, 821 (Mass. 1991) (quoting *Wang Labs., Inc. v. Bus. Incentives, Inc.*, 501 N.E.2d 1163, 1165 (Mass. 1986)). There is more than adequate evidence before the Court to find that the defendants acted in willful and intentional disregard of known contractual, statutory and fiduciary obligations. A breach of fiduciary duty in a business context is an unfair and deceptive act warranting an award of multiple damages. *Quinton v. Gavin*, 64 Mass. App. Ct. 792, 797-799, 835 N.E.2d 1124 (2005). The Court is here justified in awarding multiple (double or treble) damages against all Defendants. M.G.L. c. 93A §11, authorizes an award of attorneys fees to a prevailing plaintiff. *Jet Line Servs., Inc. v. American Employers Ins. Co.*, 404 Mass. 706, 718 (1989); *Canal Electric Co. V. Westinghouse Electric Corp.*, 406 Mass. 369, 379, 548 N.E.2d 182 (1990). Submitted herewith are the affidavits of Andrew M. Osborne and Dennis Baluch.

V. Conclusion

There being no just reason for delay, judgment should enter against the Defendants Capitol, A 1, and Benedetto Cerilli in the full amount of the damages due to all Plaintiffs, which sum should be doubled or trebled and to which there should be an award of attorneys fees. Since the level of culpability for the multiple damages for each Defendant appears to be indistinguishable from the others, the same award should be made as to each Defendant.

BOSTON TOMATO & PCKG., LLC., *et al.*,
By their Attorneys,

Philip M. Weinstein, Esq.
1 Providence Washington Plaza
Providence, RI 02903
401-521-3500
401-331-9267

OSBORNE & VISCONTI,

Andrew M. Osborne
20 Eastbrook Rd., Suite 304
Dedham, MA 02026
(781) 326-9766
781-326-4113
BBO# 380455